IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GENERAL MOTORS LLC,

     Plaintiff,

     v.                                     Civil Action No. 2:12-cv-51

BILL KELLEY, INC.
d/b/a KELLEY MOTORS, INC.,

     Defendant.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

This matter comes before the Court on Plaintiff General Motors, LLC's ("GM") Motion for Supplemental Fees and Costs filed on June 27, 2013.[1]  Defendant Kelly Motors ("Kelley") filed a Response in Opposition to Plaintiff's Motion on July 12, 2013,[2] and GM filed a Reply on July 19, 2013. The Court held an evidentiary hearing and argument on Plaintiff's Motion on August 22, 2013. Plaintiff appeared by J. Todd Kennard, Esq., and Peter G. Zurbuch, Esq. Defendant appeared by Johnnie E. Brown, Esq. All parties appeared by telephone. No additional testimony or evidence was presented at the hearing.

### I. INTRODUCTION

#### A. Background

---

[1]Dkt. No. 48.

[2]Dkt. No. 56. Defendant filed its first Response (Dkt. 55) July 11, 2013 arguing, in part, that Plaintiff had not provided detailed billing records to support its motion. However, upon realizing it had overlooked the unredacted invoices previously provided by Plaintiff's counsel, Defendant filed a Supplemental Response in which it removed this argument. Thus, this Court will consider only the arguments in Defendant's second Response, which is otherwise identical to its first.

Plaintiff filed this action on July 17, 2012 alleging that Defendant breached a settlement agreement. A detailed history of this litigation is set forth in the Order granting Plaintiff's Motion for Summary Judgment,[3] which was entered on October 31, 2012. In that Order, the Court found that the settlement agreement at issue was valid and binding and that Defendant had breached the agreement. Additionally, because the agreement contained two provisions entitling Plaintiff to recover all costs and expenses incurred in enforcing the agreement,[4] the Court ordered Plaintiff to submit an affidavit setting forth its recoverable damages, including attorneys' fees and costs, by November 30, 2012. Defendant was ordered to submit any opposition to Plaintiff's statement of recoverable damages by December 31, 2012.

On November 9, 2012, Defendant filed a Notice of Appeal to the United States Court of Appeals (USCA) for the Fourth Circuit[5] as well as a Motion to Stay Order and Judgment of the District Court Pending Appeal.[6] Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Stay[7] on November 21, 2012. On November 29, 2012, this Court stayed the Order for

---

[3]Dkt. No. 33.

[4]Paragraph 14(a)(iii) provides: "In the event of a breach of this Agreement by Dealer, GM shall have any or all of the following rights and remedies, at GM's sole election...GM shall be entitled to recover all costs and expenses incurred in order to enforce this Agreement, including, without limitation, reasonable filing fees, costs, expenses, expert fees and attorneys' fees." Paragraph 18(c) provides: "Dealer shall indemnify, defend, and hold the GM Parties harmless, from and against any and all claims, demands, fines, penalties, suits, causes of action, liabilities, losses, damages, costs, and expenses (including, without limitation, reasonable attorneys' fees and costs) which may be imposed upon or incurred by the GM Parties...arising from, relating to, or caused by Dealer's...breach of this Agreement or Dealer's execution or delivery of or performance under this Agreement."

[5]Dkt. No. 34.

[6]Dkt. No. 35.

[7]Dkt. No. 39.

30 days to permit Defendant to apply for a stay to the USCA for the Fourth Circuit.[8]

Pursuant to this Court's October 31, 2012 Order, Plaintiff filed an affidavit[9] setting forth an itemized bill of costs and attorneys' fees totaling $65,008 in attorneys' fees and $1362.66 in costs for the period of June 26, 2012 to October 31, 2012. Defendant did not file an opposition to Plaintiff's statement of costs. On June 13, 2013, the Fourth Circuit affirmed this Court's order. *Gen. Motors LLC v. Bill Kelley, Inc.*, 12-2390, 2013 WL 2631688 (4th Cir. June 13, 2013). Plaintiff filed this Motion for Supplemental Fees and Costs on June 27, 2013, seeking an additional $87,735.61 in attorneys' fees incurred after October 31, 2013. In total, Plaintiff seeks $152,743.86 in attorneys' fees and $1362.66 in costs.

### B. The Motion

1. Plaintiff General Motors LLC's Motion for Supplemental Fees and Costs.[10]

### C. Decision

Plaintiff's Motion for Attorneys' Fees and Costs is only **GRANTED IN PART** because some claims were duplicates, some hours were not necessary, and some hourly rates were not reasonable in the legal market where the action took place. Defendant shall pay Plaintiff $89,841.76 within thirty days from the date of this Order.

## II. THE MOTION FOR SUPPLEMENTAL FEES AND COSTS

### A. Contentions of the Parties

---

[8]Dkt. No. 41. On December 20, 2012, Defendant filed a Motion to Stay the Order (Appeal No. 12-2390, Dkt. No. 16) with the Fourth Circuit, and Plaintiff filed a Response (Appeal No. 12-2390, Dkt. No. 19) on December 21. On December 27, 2012, the Fourth Circuit denied the request. (Appeal No. 12-2390, Dkt. No. 24).

[9]Dkt. No. 43.

[10]Dkt. No. 48.

Plaintiff contends that Defendant waived all objections to the request for attorneys' fees and costs filed on November 30, 2012. Thus, Plaintiff argues, the Court should award the fees and costs requested from June 2012 through October 2012 because Defendant has implicitly accepted as reasonable the hourly rates and number of hours expended. Further, because it is seeking the same hourly rates in its supplemental request for fees, Plaintiff urges the Court to accept these rates as reasonable in order to avoid subjecting the same counsel in the same case to two different standards. Finally, Plaintiff contends that the number of hours expended in this case were reasonable in light of the results obtained. Defendant argues that the number of hours Plaintiff's counsel expended is unreasonable because it is more than double the amount of time its counsel expended on the same case. Similarly, Defendant contends the hourly rates requested by Plaintiff's out-of-state counsel are unreasonably high for the West Virginia market. Defendant does not address the argument that it waived objections to Plaintiff's first fee request by failing to timely respond.

**B. Discussion**

*1. Waiver of Objections to First Fee Request*

Plaintiff contends that by failing to oppose its first request for fees and costs, Defendant has waived all objections to the amount requested. The Court does not agree. First, *Lloyd v. Asture* 2010 WL 3937419 (E.D.N.C. Oct. 6, 2010), which Plaintiff relies on for the proposition that a party's failure to oppose a motion for attorney's fees supports granting the motion, is not applicable as argued by the Plaintiff because the Court in *Lloyd* held that the failure to oppose a motion for attorneys' fees warranted a finding that the fee applicant was *entitled* to attorneys' fees. However, the Court still analyzed the reasonableness of the requested amount of attorneys'

fees. *Id.* ("Furthermore, claimant has asked for a reasonable amount and the court sees no special circumstances that would make the award unjust.").[11] Here, there is no question that Plaintiff is entitled to attorneys' fees. The issue is whether the amount requested is reasonable, and Plaintiff cites no authority for the proposition that an uncontested fee application is *per se* reasonable.

Moreover, this Court has a duty to evaluate the reasonableness of a fee request, even in the absence of specific objections. *See, e.g. Broyles v. Director, Office of Workers' Compensation Programs*, 974 F.2d 508, 510 (4th Cir. 1992) ("Although the Director has not challenged the number of hours claimed, we have the responsibility of determining whether the fees sought are *reasonable*, and this requires an examination of whether the hours claimed are *reasonable* when viewed in light of the question presented, the state of the law, and the experience and expertise of the attorneys."); *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 245 (4th Cir. 2009) (holding that the district court abused its discretion by awarding the requested hourly rates "in the absence of satisfactory specific evidence of the prevailing market rates") (internal quotation marks omitted). Accordingly, this Court does not find that it must accept Plaintiff's first fee request without examination.

*2. Reasonableness of Fees Requested*

Plaintiff requests a total of $154,106.52 in fees and costs incurred from June 2012 through June 2013. This figure includes $65,008.25 in attorneys' fees and $1362.66 in costs

---

[11]Plaintiff also cites two cases from this Court for the proposition that an uncontested hourly rate is *per se* reasonable and should be accepted by the Court. However, both cases actually hold that an uncontested hourly rate *may* be accepted by the court as the reasonable market rate even if the Plaintiff cannot produce sufficient evidence to prove the rate is the market rate. *See Cotter v. Prudential Fin.*, 2007 WL 38696 (N.D.W.Va. Jan. 5, 2007); *Moats v. City Hosp., Inc.*, 2007 WL 2220282 (N.D.W.Wa. Aug. 2, 2007). In fact, in *Moats,* while this Court exercised its discretion to approve the uncontested hourly rate as reasonable, it also disapproved several of the hours Plaintiff requested even though Defendant raised no objection. *Moats* at *10.

from June 2012 through October 2012, and $87,735.61 in attorneys' fees from November 2012 through June 2013. As an initial matter, the Court must address some inconsistencies discovered in Plaintiff's billing records. For the period of June-October 2012, Plaintiff requested $65,008.25 in attorneys' fees consisting of $10,263.63 incurred by Plaintiff's local counsel, Busch, Zurbuch & Thompson, PLLC ("BZ&T"), and $54,744.62 incurred by Plaintiff's regular counsel, Jones Day in Columbus, Ohio. The $1362.66 in costs includes $1050 for admission to the West Virginia State Bar ($350 each for Jones Day attorneys Amadi, Jones, and Kennard), $300 in *pro hac vice* application fees to the Court ($100 each), and $12.66 in UPS charges.

After reviewing the billing records, the Court notes that $4250 of the attorneys' fees attributable to BZ&T are duplicates of expenses requested elsewhere. Specifically, on July 1, 2012, BZ&T included in its request for fees $1050 for the WV State Bar and $300 in *pro hac vice* fees.[12] Similarly, on August 1, BZ&T billed Jones Day for another $1050 for the WV State Bar and $900 for *pro hac vice* filing fees. Additionally, BZ&T billed Jones Day for the $350 district court filing fee twice; once on July 1 and once on August 1. Finally, although BZ&T only billed Jones Day for $2280 in attorneys' fees for the month of July, Jones Day billed Plaintiff $2880, which represents a $600 overage. Thus, altogether, $4250 of the requested attorneys' fees must be eliminated. Moreover, a review of the billing records shows that another $982.71 of the requested attorneys' fees are actually expenses. To simplify later calculations, the Court will classify these amounts as costs. Therefore, the total costs from June through October were $2345.37.

---

[12]BZ&T actually billed for $600 in *pro hac vice* filing fees. However, the fee to appear *pro hac vice* in this Court is $200 per attorney, and the Jones Day attorneys only included $300 in *pro hac vice* fees in the request for court costs, so only $300 of the entry is duplicative.

Summarizing the above, of the $65,008.25 in attorneys' fees requested, the Court finds that $4250 should be disregarded as duplicative and $982.71 should be considered costs. That leaves $59,775.54 in actual attorneys' fees for the period of June through October 2012. For the period of November 2012 through June 2013, Plaintiff requests $87,735.61 in attorneys' fees. However, a review of the billing records shows it is actually requesting $87,813.92 in attorneys' fees and $556.87 in costs. Thus, Plaintiff is seeking $147,589.46 in total attorneys' fees and $2,902.24 in total costs. The Court must now determine if this amount is reasonable.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). In determining this figure, commonly called the lodestar amount, the Fourth Circuit has adopted the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n. 28 (4th Cir. 1978). These factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* "The proper point at which the *Johnson* factors are to be considered is in determining the reasonable rate and the reasonable hours. A fee based upon reasonable rates and hours is presumed to be

fully compensatory without producing a windfall." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

a. Number of Hours Expended

The fee applicant bears the burden of establishing that the number of hours worked is reasonable. *Hensley*, 461 U.S. 424, 434. The Court is to "exclude from the initial fee calculation hours that were not reasonably expended." *Id.* "Counsel for a prevailing party has a duty to exercise 'billing judgement' to 'exclude from a fee request hours that are excessive, redundant or otherwise unnecessary.'" *Daly v. Hill*, 790 F.2d 1071, 1079 (4th Cir. 1986) (quoting *Hensley*, 461 U.S. at 434). Plaintiff asserts that the time expended by its counsel was reasonable because it "succeeded at every juncture of this litigation, attaining summary judgment in only three and a half months, successfully opposing motions to stay in both this Court and the Fourth Circuit, and decisively prevailing on appeal." Defendant argues that the number of hours Plaintiff's attorneys spent on the case is exorbitant and unreasonable. Defendant does not identify any specific time entries as being excessive or unreasonable. Rather, Defendant essentially argues that because its attorney only spent 237.9 total hours on the case, 237.9 hours is the reasonable number of hours that this Court should use in its lodestar calculation.

The Court is not persuaded that it must use the number of hours Defendant's counsel spent in the lodestar calculation, particularly because Defendant's counsel did not prevail at any stage of this litigation. As discussed above, the Court must use the *Johnson* factors in determining a reasonable number of hours expended. While the Court has reviewed all of the *Johnson* factors, it appears that the factors particularly relevant to this inquiry are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the time limitations

imposed by the client or the circumstances; and (4) the amount involved and the results obtained.

      During the first phase of this litigation, from the filing of the complaint to summary judgment, Plaintiff's counsel billed a total of 203.9 hours. The time and labor required during this phase were substantial. Plaintiff's counsel filed a civil complaint, six motions, and two response pleadings. Additionally, during this phase of the litigation, while the underlying case may have been a standard breach of contract action, there were numerous novel and difficult questions at issue, such as Defendant's state law defenses. The complexity of the issues in the case is evidenced by the 24 page Memorandum Order this Court issued in granting summary judgment. Moreover, as Plaintiff points out, there were significant time limitations at play in this case because Defendant was in breach of his obligations under the settlement agreement, so Plaintiff desired an incredibly speedy resolution to this case. Finally, as to results obtained, Plaintiff's counsel attained summary judgement in less than four months. Based on these considerations, the Court finds that 203.9 hours was a reasonable amount to expend during the first phase of the litigation.

      However, the same *Johnson* factors militate against a similar finding with regard to second phase of this litigation. For the period of November 2012 through June 2013, Plaintiff's counsel billed 271.4 hours,[13] which is 67.5 more hours than in the first phase. However, much less time and labor should have been required during this period. Although the Court recognizes that Plaintiff's counsel drafted oppositions to Defendant's requests for a stay and filed an

---

[13]The detailed time records submitted in support of Plaintiff's fee request show that Plaintiff's counsel billed a total of 291 hours from November 2012 through June 2013. However, in his affidavit accompanying the time records, attorney Kennard states that a total of 19.6 hours were not included in the final figure. Therefore, Plaintiff is requesting compensation for 271.4 total hours during this phase of the litigation.

appellate brief, the Court also notes that counsel should have been intimately familiar with the facts and law surrounding this case by the second phase of the litigation. *See Spell v. McDaniel*, 852 F.2d 762, 768-70 (4th Cir. 1988) (upholding reduction of compensable hours for work on appeal where the "issues had been fully researched and discussed at the trial level, making the appellate endeavor largely duplicative"). Additionally, unlike the first phase of the litigation, the issues involved were no longer unique or novel because they had been fully briefed and argued in this Court. Several specific time entries illustrate the excessive time spent on phase two in relation to phase one. For example, during phase one, Plaintiff's counsel spent 69.2 hours on "Other Case Assessment, Development, and Administration." However, during phase two, when all of the initial research and factual development was over, Plaintiff's counsel spent 93.2 hours on this task. Similarly, while Plaintiff's counsel spent 57.9 hours on pleadings and motions during phase one, they expended 99 hours on appellate briefs and motions during phase two even though much of the appellate brief rehashes the motion for summary judgment word for word. The Court simply cannot conceive, especially in light of counsel's experience and expertise, how so much more time was reasonably required during the second phase of this case. *See Spell*, 852 F.2d at 768-70 (noting that "it is highly unusual, if not unique, that the cost of presenting a case on appeal is more than it was for trial") (internal citation omitted).

Thus, the Court must reduce the number of hours claimed in order to ensure that the overall lodestar amount is reasonable in light of the facts and circumstances of this case. However, the billing records Plaintiff submitted in support of its request are voluminous and vague in some respects due to substantial redaction. Mindful of the Supreme Court's recent admonition that "trial courts need not, and indeed should not, become green-eyeshade

accountants" when determining reasonable attorneys' fees, the Court will not engage in a line by line reduction of hours expended. *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011). "The essential goal in shifting fees...is to do rough justice, not achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorneys' time." *Id.*; *see also Daly v. Hill*, 790 F.2d 1071, 1087 (4th Cir. 1986) ("Attorney's fee awards must be fair and must fully compensate prevailing attorneys. However, fee awards need not reach technical perfection in order to fall within the realm of a district court's discretion in determining a reasonable fee.").

Accordingly, the Court will reduce, by a reasonable percentage, the number of hours billed during the second phase of the litigation. *See e.g., Spell,* 852 F.2d at 769 (reducing allowable attorneys' hours across the board because it was "impossible...to cull the justified from the unjustified"); *Goodwin v. Metts*, 973 F.2d 378, 384-84 (upholding district court's 50% reduction in compensable hours); *In re Outsidewall Tire Litigation*, 748 F.Supp.2d 557, 565-66 (E.D.V.A. October 28, 2010) ("Courts frequently exercise their discretion to reduce an entire fee request or portions thereof by a stated percentage in order to address some deficiency in the application, such as redundant time entries, failure to exercise billing judgment, or excessive number of hours sought."). Based on the *Johnson* factors discussed above, the Court finds that only 50% of the hours billed by Plaintiff's counsel in phase two were reasonably required given the decrease in time and labor. Accordingly, a reasonable number of hours expended during phase two is 50% of 271.4, or 135.7 hours. Therefore, the Court finds that the reasonable number of hours expended in this case overall is 339.6, which includes 203.9 in phase one and 135.7 in phase two.

b. Reasonable Hourly Rate

"[D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, 244 (4th Cir. 2009). "The burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11. "The market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Depaoli v. Vacation Sales Assocs., L.L.C.,* 489 F.3d 615, 622 (4th Cir. 2007). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered." *Rum Creek*, 31 F.3d at 175.

Here, Plaintiff contends that the requested hourly rates are reasonable based upon the skill, experience, and reputation of its counsel. However, Plaintiff does not provide any objective evidence regarding the customary rate charged for similar services or the awards in similar cases because it maintains that the Court need not enter into an analysis of these factors due to Defendant's supposed waiver of objections to the hourly rate requested. Defendant does not contest the requested hourly rates for BZ&T, and explicitly states that "GM's local counsel's rates constitute reasonable rates in the West Virginia legal market." However, Defendant

12

contends that the rates requested by the Jones Day attorneys are unreasonably high for the West Virginia legal market. Defendant bases this contention on the affidavit of its attorney, which states that the prevailing market rates in West Virginia for the representation of dealers and manufacturers in litigation are the rates he charges- $195 per hour for partners and $150 per hour for associates.

The Court first notes that neither party has presented sufficient evidence of the prevailing market rate in this district for similar litigation. Plaintiff assumes the Court will automatically use its requested rates, and Defendant urges the Court to accept its counsel's rates as the prevailing market rate for automobile manufacturer and dealer litigation. As discussed above, the Court does not agree that it must automatically accept as reasonable Plaintiff's requested hourly rates. Further, the affidavit of Defendant's counsel as to the prevailing market rate in this district is clearly insufficient because Defendant is interested in this Court's final determination of a reasonable rate.

"In the absence of specific evidence regarding the prevailing market rate, the Court may establish a reasonable rate based upon its own knowledge and experience of the relevant market...." *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F.Supp.2d 568, 593 (W.D.N.C.2010). Based on its experience and knowledge of the legal market in this district, the Court finds that the average market rate for a general litigator in the Northern District of West Virginia is between $200 and $250 per hour. Because the rates charged by Jones Day associates Amadi and Taylor are within this range, the Court accepts them as reasonable. Further, Defendant concedes that the rates charged by Plaintiff's local counsel, including a paralegal, are reasonable. Thus, the rates in dispute are those of Jones Day partners Jones and Kennard.

13

The rates charged by attorneys Jones and Kennard are substantially higher than $250 per hour. However, the Court has no reason to question that these rates are reasonable in the Columbus market, especially in light of the fact that they are the actual rates billed by Jones Day. *See Rum Creek*, 31 F.3d at 179 (holding that evidence that plaintiff's out-of-state attorneys' rates were charged to and actually paid by plaintiff, and that persons involved in charging and paying rates believed them to be reasonable was sufficient to establish prevailing market rate for services charged by the attorneys); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 ("Recall that the objective is to find the reasonable fee for the work. When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate."). In some circumstances, out-of-state rates may be used in calculating the lodestar amount. "Rates charged by attorneys in other cities...may be considered when 'the complexity and specialized nature of the case may mean that no attorney, with the required skills, is available locally,' and the party choosing the attorney from elsewhere acted reasonably in making the choice." *Rum Creek*, 31 F.3d at 179 (quoting *National Wildlife Federation v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).

In *Rum Creek*, the Court determined that the rates charged by Plaintiff's Richmond, VA counsel should have been used in calculating the lodestar, even though they were higher than the prevailing market rate in Charleston, WV, because the litigated issues were complex, the Richmond firm was Plaintiff's regular counsel, and its lawyers were well-experienced in the type of matters involved in the suit. *Rum Creek*, 31 F.3d at 179. In addition, the Court found that Plaintiff acted reasonably in using out-of-state counsel because it was suing the governor and police of WV, which "could be a politically sensitive activity for a local West Virginia firm." *Id.* Here, in contrast, the litigated issues did not concern any questions of preemption or

constitutional law, and there were no political considerations necessitating the use of out-of-state counsel. While the Court believes that Plaintiff benefitted from using its national counsel in this case because of the enhanced experience and skill in trying similar matters, this consideration is already reflected in the Court's determination of the appropriate market rate in this district for similar services as discussed below. However, this case was not so complex or specialized that Plaintiff's use of out-of-state counsel was required because no local counsel could have tried the case. Accordingly, the Court declines to accept the out-of-state Jones Day rates as reasonable in determining the lodestar amount.

This does not end the inquiry because the appropriate rate to use in the lodestar is the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). There is no question that both Jones and Kennard possess substantial experience and skill. Jones has worked on dealer related matters for over 20 years, and Kennard has represented General Motors for over ten years. Further, Plaintiff is currently litigating similar settlement-agreement cases throughout the United States, and both Jones and Kennard have been representing Plaintiff in these cases for years. The Court agrees with Plaintiff's contention that "[t]he quick attainment of an unquestionably successful outcome is a direct result of GM's counsel's familiarity with and skill in litigating such cases." Based on these factors, the Court finds that a reasonable hourly rate for Jones and Kennard should be higher than $250 per hour. However, the Court also believes that the hourly rates actually requested are exorbitant for this market, even taking into account the experience, skill, and reputation of Plaintiff's counsel. After considering all of the pertinent factors, the Court finds that reasonable hourly rates are $400 per hour for Jones and

$350 per hour for Kennard. While these rates are higher than the average market rate for general litigators in this district, they reflect the breadth of experience these attorneys possess with regard to similar dealer-manufacturer litigation, as well as the long-term relationship Plaintiff has had with Jones Day.

c. Lodestar Amount

Having found the reasonable number of hours expended and the reasonable hourly rates, the Court finds that $86,939.52 is the proper lodestar award in this case. This figure represents the total number of hours claimed by each of Plaintiff's attorneys in phase one multiplied by the hourly rates determined above plus one half the total number of hours claimed by each of Plaintiff's attorneys in phase two multiplied by the hourly rates determined above.[14] "If a lodestar fee is properly calculated, adjustment of that figure will, in most cases, be unnecessary." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).  Only in "exceptional circumstances" must the lodestar figure " be adjusted to account for results obtained and the quality of representation." *Id.*
 However, "[w]here the *Johnson* factors are considered in the process of calculating the lodestar fee, the efforts of the attorneys which led to the excellent results, such as time, effort, skill, etc., will have been considered." *Id.* at 1082.

As discussed above, the Court considered the following *Johnson* factors in determining

---

[14]In phase one, Jones billed 26.1 hours, Kennard billed 54.7 hours, Amadi billed 81.9 hours, and BZ&T billed 41.2 hours. These hours were multiplied by the hourly rates discussed above, which results in a total for phase one of $49,554.02 in attorneys' fees. In phase two, Jones billed 68 hours, Kennard billed 42.2 hours, associates Taylor and Amadi billed a total of 149.6 hours, Peter and Jeffrey Zurbuch billed a total of 22.7 hours, and paralegal Severino billed a total of 8.5 hours. Thus, Plaintiff's counsel billed a total of 291 hours in phase two. As discussed in FN 13, 19.6 hours were excluded from the final figure, however redaction of the billing records makes it impossible to discern which attorneys' hours were actually excluded. Giving Plaintiff the full benefit of the doubt, in making the final lodestar calculation, the 19.6 hours have been excluded from Taylor and Amadi's total, which gives them a total of 130 hours. Finally, each attorney's total hours were reduced by 50% and multiplied by the hourly rates discussed above, which results in a total for phase two of $37,385.50 in attorneys' fees.

16

the reasonable number of hours expended and the reasonable hourly rate of compensation: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly;  (4) the customary fee; (5) the time limitations imposed by the client or the circumstances; (6) the amount involved and the results obtained; (7) the experience, reputation, and ability of the attorneys; and (8) the nature and length of the professional relationship with the client. The remaining four *Johnson* factors are not relevant to the circumstances of this case. Based on all of the evidence in the record and consideration of the relevant *Johnson* factors, the Court finds that a fee award of $86,939.52 fully and fairly compensates Plaintiff's attorneys in this case and no adjustment, upward or downward, is necessary.

d. Costs and Expenses

Plaintiff also requests a total of $2902.24 in costs and expenses. Defendant does not contest this figure. The Court has reviewed the billing records and finds that the requested amounts are reasonable.

### III.  CONCLUSION

Plaintiff's Motion for Attorneys' Fees and Costs is **GRANTED IN PART**. Defendant shall pay Plaintiff $89,841.76 in attorneys' fees and costs within thirty days from the date of this Order.

Filing of objections does not stay this Order.

Any party may, within fourteen [14] days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is  made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court

Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

**IT IS SO ORDERED**.

DATED: September 30, 2013                    /s/ *James E. Seibert*
                                             JAMES E. SEIBERT
                                             UNITED STATES MAGISTRATE JUDGE